WARE, Judge.
Michael J. Medus brought this action by rule against his former wife, Mathilda Thi-bodeaux Medus, to obtain custody of his four minor children. He appeals a judgment of the district court sustaining an exception of lack of subject matter jurisdiction and dismissing his rule.
On May 12, 1977, the Twenty-Seventh Judicial District Court rendered a judgment of divorce in favor of appellant, awarding the permanent care, custody and control of the four minor children of the marriage to appellee. Appellee retained custody of the children until May 24, 1978, when the Juvenile Court for St. Landry Parish (the City Court of the City of Eunice) granted their custody to appellant in a proceeding bearing the docket number J-2065 and entitled “State of Louisiana vs. Michael James Me-dus.” On March 26, 1979, custody was returned to appellee by the juvenile court in a proceeding bearing the same docket number but entitled “State of Louisiana in the Interest of Christopher Shane Medus, Douglas Anthony Medus, Corina Lynn Medus and Leta Marie Medus.”
Appellant brought the present action in the district court on April 5, 1979. Appellee filed a declinatory exception, alleging that the district court was without jurisdiction to determine the custody issue presented, because the juvenile court had already acquired and continued to maintain exclusive jurisdiction. After a contradictory hearing, the district court sustained the exception and dismissed appellant’s rule.
The evidence introduced by appellee in support of her exception was limited to the minute entries for the two juvenile court proceedings and the May 24, 1978 and March 26, 1979 orders changing custody. The district court based its conclusion that the juvenile court had continuing, exclusive *23 jurisdiction on the language of those orders. Both were prepared on a form containing blanks for the names of the children, the name and address of the person to whom custody is granted, and the date. The orders state that the court had “taken said child into its protective custody.”
As appellant correctly notes, the exclusive jurisdiction of juvenile courts with regard to determining custody is limited. Article 17 of the Code of Juvenile Procedure provides in pertinent part:
“Except to the extent that a court exercising juvenile jurisdiction has determined custody of a child in a judgment of disposition after the child has been adjudicated delinquent, in need of supervision, or in need of care, nothing contained in Articles 14 through 17 shall deprive courts exercising civil jurisdiction of the right to determine custody of a child under writs of habeas corpus or other proceedings, or to determine the custody of a child when such custody is incidental to the determination of cases pending in such courts.” (Emphasis added).
Under that provision, it is clear that appel-lee had to prove two things in order to establish that the juvenile court had exclusive jurisdiction as alleged in her exception. First, she had to show that the children had been adjudicated delinquents, in need of supervision, or in need of care. Second, she had to show that their custody had been determined by the juvenile court in a judgment of disposition.
Article 87 of the Code of Juvenile Procedure provides the following with respect to judgments of disposition:
“A. The court shall enter into the record a written judgment of disposition specifying the following:
(1) The nature of the disposition.
(2) The maximum duration of the disposition and, if committed to the Department of Corrections, the maximum term of the commitment.
(3) The agency, institution, or person to whom the child is assigned.
(4) The conditions of probation, if applicable, and
(5) Any other applicable terms and conditions regarding the disposition.
B. In delinquency proceedings, the judgment of disposition shall specify the offense for which the child has been adjudicated a delinquent.
C. An extract of minutes of court specifying the information in Paragraph A and signed by the court shall be considered a written judgment of disposition.
D. The date of entry of the judgment of disposition shall be recorded on the judgment.
E. Upon request, a copy of the judgment of disposition shall be furnished to the parent.”
After examining the minute entries and corresponding orders introduced into evidence by appellee, we believe that both constitute judgments of disposition within the meaning of that article. Accordingly, we find that appellee has satisfied the second requirement set out above.
Our finding that the juvenile court has determined custody of the children in a judgment of disposition does not resolve the issue before us, however. A judgment of disposition rendered by the juvenile court does not preclude the district court from determining custody at a later time, unless the children have been adjudicated delinquent, in need of supervision, or in need of care. LSA-C.J.P. Art. 17. A proceeding in which such an adjudication is made must be initiated by a petition. LSA-C.J.P. Art. 45.[1] The record before us does not contain such a petition or any other indication that such an adjudication was made by the juvenile court.
Appellant alleges that the May 24, 1978 juvenile court proceedings were initiated by appellee because she wished to voluntarily surrender custody of the children pursuant *24 to LSA-R.S. 13:1570,[2] which provides in pertinent part:
“Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
C. To award the custody of a child domiciled within the parish or who is actually in the parish to an agency, institution or individual when the parent or other person having custody or care of the child wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.”
That allegation appears to be supported by the court’s referral to appellee as “the complaining witness” in the minutes of those proceedings.
Appellant further alleges that the March 26, 1979 proceedings were not initiated by a petition alleging that the children were delinquent, in need of supervision, or in need of care. Again, his allegations appear to be supported by the minute entry for those proceedings, wherein the court stated:
“Considering the testimony of Mrs. Helen 0. Castellini [Welfare Social Worker] which is summarized in her written report as well as the testimony of the mother, The Court feels that it is in the best interest of the children to be returned to the custody of their natural mother . .” (Emphasis added).
Appellee neither admits nor denies these allegations.
If, as appellant argues, the juvenile court never adjudicated the children delinquents, in need of supervision, or in need of care, it is clear that the juvenile court does not have exclusive jurisdiction. LSA — C.J.P. Art. 17. Unfortunately, the evidence in the record before us is insufficient to make a finding on that point. The fact that the judgments make no mention of such an adjudication appears to be significant. However, it is well settled that it is not essential that an express finding of delinquency, need of supervision or need of care appear in the decree following a juvenile court hearing, provided that there was sufficient evidence before the trial judge to support a conclusion that the child was in one of those classifications. State, In the Interest of Thompson, 372 So.2d 1255 (La. App. 3rd Cir. 1979); State v. Robinson, 353 So.2d 442 (La.App. 3rd Cir. 1977). Under these circumstances, we must conclude that appellee has not borne her burden of proving the facts on which her exception is based and that the district court, therefore, erred in sustaining it.
We note, however, that appellee’s failure to prove her exception would not divest the juvenile court of exclusive jurisdiction, if the statutory requirements for obtaining such jurisdiction were in fact satisfied. Therefore, if we reverse and render judgment overruling the exception, there is a disturbing possibility that any judgment rendered by the district court on the merits will be null because of its lack of subject matter jurisdiction. LSA-C.C.P. Art. 3. In view of this fact, we believe that the most appropriate solution to the problem would be to reverse and remand this matter to the district court for the taking of further evidence in order to clarify the juvenile court’s position.
Accordingly, the judgment appealed is reversed and set aside, and this matter is remanded to the district court for further proceedings consistent with the views expressed herein. All costs of this appeal are assessed against appellee, Mathilda T. Me-dus.
REVERSED AND REMANDED.

. The requirements for the form and contents of the petition are set out in LSA-C.J.P. Arts. 47—49.

. Such proceedings are now authorized and governed by the Code of Juvenile Procedure, which became effective on January 1, 1979. Article 17 of that Code provides in pertinent part:
“A. A court exercising juvenile jurisdiction shall have exclusive original jurisdiction, in conformity with any special rules prescribed by law, in the following cases:
(2) Proceedings to award custody of a child domiciled within the parish or who is actually in the parish to an agency, institution or individual, when the parent wishes to relinquish custody or care for the purpose of enabling the child to receive adequate care and protection.”